IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| LAURA L. WEBSTER | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of Social Security | : | NO. 08-5283 |

## REPORT AND RECOMMENDATION

ELIZABETH T. HEY
UNITED STATED MAGISTRATE JUDGE                          August  18, 2009

This action was brought pursuant to 42 U.S.C. § 405(g) to review the final

decision of the Commissioner of Social Security ("Commissioner") denying applications

filed by Laura Webster ("Plaintiff") for Disability Insurance Benefits ("DIB") and

Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act

("Act").  Plaintiff has raised several issues on appeal.  For the reasons that follow, I find

that there is substantial evidence to support the findings of fact and conclusions of law of

the Administrative Law Judge ("ALJ").  Therefore, I recommend that the final decision of

the Commissioner be affirmed.

## I.    PROCEDURAL HISTORY

Plaintiff protectively filed claims for DIB and SSI on December 19, 2005, alleging

a disability onset date of October 4, 2005.  Tr. at 270.  Her claim was initially denied on

July 28, 2006.  Id. at 22-26.[1]   On August 17, 2006, Plaintiff requested an administrative

hearing.  Id. at 27-28.  On February 15, 2007, the ALJ held a hearing, at which Plaintiff,

_____

[1] Only the initial SSI denial is contained in the administrative record.

medical advisor Richard Saul, M.D., and vocational expert, ("VE"), Bruce Martin,

testified.  Id. at 268-301.  The ALJ issued a decision denying Plaintiff's DIB and SSI

claims on May 25, 2007.  Id. at 302-15.  Plaintiff requested review of the ALJ's decision

on June 21, 2007.  Id. at 9-10.  The Appeals Council denied the request for review on

September 19, 2008, id. at 4-6, rendering the ALJ's decision the final decision of the

Commissioner.  20 C.F.R. §§ 404.972, 416.1472.

## II.   LEGAL STANDARDS

The role of this court on judicial review is to determine whether the

Commissioner's decision is supported by substantial evidence.  42 U.S.C. §§ 405(g),

1383(g); Richardson v. Perales, 402 U.S. 389 (1971); Hartranft v. Apfel, 181 F.3d 358,

360 (3d Cir. 1999).  Therefore, the issue in this case is whether there is substantial

evidence to support the Commissioner's conclusion that Plaintiff is not disabled.

Substantial evidence is "such relevant evidence as a reasonable mind might accept as

adequate," and must be "more than a mere scintilla."  Burnett v. Comm'r of Soc. Sec.,

220 F.3d 112, 118 (3d Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir.

1999)).  The court has plenary review of legal issues.  Schaudeck v. Comm'r of Soc. Sec.,

181 F.3d 429, 431 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)).

To prove disability, a claimant must demonstrate "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment . . . which has lasted or can be expected to last . . . not less than twelve

2

months." 42 U.S.C. § 423(d)(1).  The Commissioner employs a five-step process, evaluating:

> 1.   Whether the claimant is currently engaged in substantial gainful activity;
>
> 2.   If not, whether the claimant has a "severe impairment" that significantly limits his physical or mental ability to perform basic work activities;
>
> 3.   If so, whether, based on the medical evidence, the claimant's impairment or combination of impairments meets or equals the criteria of an impairment listed in the "listing of impairments," 20 C.F.R. pt. 404, subpt. P, app. 1, which results in a presumption of disability;
>
> 4.   If the impairment does not meet or equal the criteria for a listed impairment, whether, despite the severe impairment, the claimant has the residual functional capacity to perform his past work; and
>
> 5.   If the claimant cannot perform his past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

See Allen v. Barnhart, 417 F.3d 396, 401 n.2 (3d Cir. 2005) (quoting Sykes v. Apfel, 228 F.3d 259, 262-63 (3d Cir. 2000)) (internal citations omitted); see 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4).  The Plaintiff bears the burden of proof for steps one through four of this test, while the Commissioner bears the burden of proof for the last step.  See id.

III.     **FACT RECORD AND THE ALJ DECISION**

Plaintiff was born on February 28, 1961, and was 45 years old at the time of the administrative hearing.  Tr. at 273.  She left school in 1977 at age 16, having completed the eighth grade, to care for her first child.  Id. at 274-75.  She has past relevant work experience as a home health attendant and child monitor during the years from 1998 to 2004.  Id.  She does not recall what she did prior to 1998, and has not worked since 2004. Id. at 273-75.  When working, Plaintiff did not work for longer than six to twelve months for any particular employer because she would quit or get fired for missing work.  Id. at 187.  Plaintiff claimed she was unable to work due to her HIV-positive status, lower back pain and depression.  Id. at 27, 35.

Plaintiff has three children, ages 28, 20, and 17 at the time of the hearing,  and lives with her oldest daughter who has two young children.  Tr. at 276-77.  Plaintiff's weekly activities include bathing the children, grooming them, feeding them, walking them seven blocks to school, doing the laundry, cleaning the house, riding the bus to go grocery shopping, and riding the bus and subway to doctor appointments.  Id. at 277-82.

During the hearing, Dr. Saul, a psychiatrist appointed by the ALJ to act as a medical expert, testified that Plaintiff exhibited elements of major depressive disorder, anxiety, obsessive-compulsive disorder, and post-traumatic stress.  Tr. at 294.  Dr. Saul's conclusions were based upon a review of the treatment notes in the record.  He also expressed some concern over Plaintiff's physical condition.  Id.  Plaintiff is HIV positive, complains of back, knee, and hip pain, and takes medication for a bladder issue and high

4

blood pressure.  Id. at 285-86, 291.  While Plaintiff takes several medications for her

HIV, she is asymptomatic and has not experienced any muscular degeneration, fatigue,

weight-loss, or opportunistic infections.  Id. at 221.

      The ALJ found through his review of the objective medical evidence and

administrative hearing testimony that Plaintiff was not disabled within the meaning of the

Social Security Act.  Tr. at 305-315.  The ALJ found as follows:

1. At step one, Plaintiff has not engaged in substantial gainful activity
   since October 4, 2005, her alleged onset date.  Id. at 307.

2. At step two, Plaintiff has the following severe impairments: HIV
   positive, depressive disorder with elements of anxiety and obsessive
   compulsive features, and a history of cocaine abuse.  Plaintiff's other
   impairments, including an alleged back impairment, are nonsevere.
   Id.

3. At step three, Plaintiff does not have an impairment or combination
   of impairments that meets or medically equals one of the listed
   impairments in 20 CFR Part 404, Subpart P, Appendix 1.  Id. at 308.

4. Plaintiff retains the residual functional capacity to perform medium
   work with low stress, defined as 1-2 step tasks, which do not involve
   working with money or dealing with people.  Id. at 311.

5. At step four, Plaintiff is capable of performing past relevant work as
   a home attendant and child monitor.  Id. at 315.

As a result, the ALJ found that Plaintiff was not disabled as defined by the Social

Security Act since October 4, 2005.  Id.

      In her present Request for Review, Plaintiff argues that the decision of the ALJ is

not supported by substantial evidence because the ALJ (1) failed to properly consider

Plaintiff's testimony, (2) erroneously failed to find Plaintiff's physical impairments

severe, (3) failed to properly assess Plaintiff's residual functional capacity, and (4) failed to hold a supplemental hearing.

## IV.   DISCUSSION

### A.   Credibility of Plaintiff's Testimony

Plaintiff argues that the ALJ failed to properly credit her testimony regarding the extent of her pain, fatigue, and limitations.  See Pl.'s Br. at 3-5.  Specifically, Plaintiff complains that the ALJ ignored the objective medical evidence and her medication regime which support her testimony.

At the administrative hearing, Plaintiff testified that she can't work due to "back problems, I just don't like to be around a lot of people, and I have memory loss when given a direct order, a job to do." Tr. at 282.  She also talked about being "constantly sad for no reason" approximately every other day.  Id. at 284.  Her primary focus, however, was her lack of memory.  Id. at 286.  Plaintiff also testified that she has good and bad days, and that on bad days she locked herself in her room and did not go out.  Id. at 291.  Physically, she testified that she could take care of herself with the exception of getting out of the bathtub due to knee and back pain.  Id. at 288.  She described joint arthritis and swelling in her hands, feet, and knees, particularly in bad weather, and also mentioned a recent car accident causing back pain and "spells" like "my head is spinning."  Id. at 291.

In considering a claimant's testimony concerning her symptoms, "[o]nce an ALJ concludes that a medical impairment that could reasonably cause the alleged symptoms exists, . . . the ALJ [must] determine the extent to which a claimant is accurately stating

the degree of pain or the extent to which he or she is disabled by it." <u>Hartranft v. Apfel</u>, 181 F.3d 358, 362 (3d Cir. 1999).  Here, the ALJ acknowledged that Plaintiff had impairments likely to cause the symptoms of which she complains, reviewing the medical evidence supporting each, but found that "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." <u>Tr.</u> at 313. In making such a determination, the regulations direct the ALJ to consider: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication, (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  20 C.F.R. §§ 404.1529(c) and 416.929(c).  Upon considering these elements, any inconsistencies will "permit an ALJ to conclude that some or all of the claimant's testimony about her limitations or symptoms is less than fully credible." <u>Garrett v. Comm'r. of Soc. Sec.</u>, 274 Fed. Appx. 159, 162 (3d Cir. 2008).

In making her credibility determination, the ALJ reviewed Plaintiff's medications and noted that she had had trouble sleeping and difficulty with her memory.  However, as noted by the ALJ, Plaintiff testified that she took care of her grandchildren, cooked, washed the dishes, and did laundry. <u>Tr.</u> at 313.  In fact, at the administrative hearing,

Plaintiff stated that she moved in with her daughter to help care for her two grandchildren, ages 8 and 4.  Id. at 277.  She got the children ready for school in the morning and walked them seven blocks to school.[2]  Id. at 277-78.  She made dinner for the family and cleaned the dishes.  She did the housework and sometimes the laundry, describing herself as a "neat freak."  Id. at 279, 292, 188.  She grocery shopped, traveling by bus to the market.  Id. at 280.  In addition, Plaintiff stated that she took three buses to get to her weekly therapist appointment, and took the children on outings in the summer.  Id. at 281.  Additionally, Plaintiff stated that she dealt with her forgetfulness by either hanging notes or using her telephone to remind her.  Id. at 287.  Plaintiff's testimony about her daily activities is inconsistent with her complaints of disabling pain, forgetfulness, and an inability to be around a lot of people.  Therefore, the ALJ was justified in her credibility assessment.  See Garrett, 274 Fed. Appx. at 162.

Moreover, as will be discussed in the next section of this Report, the objective medical evidence fails to support the level of pain and other symptoms to which Plaintiff testified.  Those results are consistent, however, with the daily activities to which Plaintiff testified.

---

[2]It is unclear whether Plaintiff took just one or both her grandchildren to school. Tr. 278.  However, this discrepancy is immaterial, as it is clear that Plaintiff walked seven blocks each day to the school.

**B.**     <u>Severity of Plaintiff's Physical Impairments</u>

Plaintiff also argues that the ALJ erred in not classifying her physical impairments as "severe" at step two of the five-step sequential evaluation.  <u>See</u> Pl.'s Br. at 5-7.  Step two is known as the "severity regulation" because it focuses on whether the claimant is suffering from a severe impairment. 20 C.F.R. §§ 404.1520(c); 416.920(c).  An impairment is severe if it is "of magnitude sufficient to limit significantly the individual's ability to do basic work activities."  <u>Santise v. Schweiker</u>, 676 F.2d 925, 927 (3d Cir. 1982); <u>see also</u> 20 C.F.R. §§ 404.1520(c); 416.920(c); S.S.R. 96-3p, "Considering Allegations of Pain and Other Symptoms in Determining Whether a Medically Determinable Impairment is Severe."  Basic work activities are defined in the regulations as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§ 404.1521(b); 416.921(b).  A non-severe impairment is a "slight" abnormality which has a minimal effect on the individual's ability to work, irrespective of age, education or work experience.  <u>Bowen v. Yuckert</u>, 482 U.S. 137, 148-51 (1987).

Step two is not aimed at potentially viable claims.  Rather, it is intended to weed out obviously invalid claims, which explains why impairments causing even minimal effects qualify as severe and allow for further sequential scrutiny.  As the Third Circuit has stated, "[t]he step-two inquiry is a *de minimis* screening device to dispose of groundless claims."  <u>Newell v. Comm'r of Soc. Sec.</u>, 347 F.3d 541, 546-47 (3d Cir. 2004).

9

At the outset, I note that Plaintiff's argument is curious in light of her counsel's representation at the beginning of the administrative hearing that the thrust of Plaintiff's disability was her mental impairment.

> Ms. Webster complains of some physical problems, but the bulk of the, the, from our standpoint the statement of fact in this case involves her, her mental illness.  And, so, a lot of the questions today will be directed toward that.

Tr. at 270.  The fact that Plaintiff now presses her physical impairments is inconsistent with this statement and her daily activities.  It is also inconsistent with her testimony where she made little reference to physical limitations.  Id. at 288, 291.

In the Findings of Fact and Conclusions of Law section of the ALJ's opinion, the ALJ found the following severe impairments: "HIV . . . positive; depressive disorder, NOS (Not Otherwise Specified) with elements of anxiety and obsessive compulsive features; and a history of cocaine abuse."  Tr. at 307.  Other impairments, including Plaintiff's back  pain, were found to be "at best nonsevere."  Id.  Plaintiff contends that the ALJ improperly classified her back and knee problems.

Despite Plaintiff's statement to Carl Liedman, D.O., the consultative examiner, that she suffered from pain in her lumbar spine on a daily basis, see tr. at 177-78, her complaints of back pain to her treating physicians were sporadic.  Physician's assistant Daniel M. Jones, with whom Plaintiff treated from at least January of 2004 through April of 2006, provided his treatment notes.  On June 14, 2005, when Plaintiff first complained to Mr. Jones of back pain after falling down steps, id. at 142, he sent her for x-rays of the

lumbar spine. The x-rays revealed that "[t]he heights of the vertebral bodies and disk spaces are maintained. The lordosis[3] is intact. There is no evidence of spondylolisthesis[4] or retrolisthesis."[5] Id. at 136, 140 (footnotes added). She was prescribed Tylenol and Flexeril.[6] Id. at 141. Plaintiff next complained of back pain in April of 2006, at which time she stated that she was walking when the pain started. Mr. Jones concluded that Plaintiff suffered from a muscle strain. Id. at 209. At that time, Plaintiff was again prescribed Flexeril, and she was also told to take Motrin, Aleve, and use moist heat. Id. at 209. After being involved in a car accident in January 2007, Plaintiff was again treated for back strain and sprain. Id. at 226-27.

During his physical examination on April 5, 2006, Dr. Liedman found Plaintiff had some decreased range of motion in the spine, and he diagnosed a history of lumbar spine pain and right hip pain. Tr. at 177-79. On April 26, 2006, however, another consultative examiner, Edmund P. Popielarski, M.D., considered Dr. Liedman's findings in

---

[3]Lordosis is a concave portion of the spinal column as seen from the side. Dorland's Illustrated Medical Dictionary, 31st ed. ("DIMD"), at 1090.

[4]Spondylolisthesis is the forward displacement of one vertebra over another, usually of the fifth lumbar over the body of the sacrum, or of the fourth lumbar over the fifth. DIMD, at 1779.

[5]Retrolisthesis (retronspondylolisthesis) is the posterior displacement of one vertebral body on the subjacent body. DIMD, at 1661.

[6]Flexeril (cyclobenzaprine) is indicated for the relief of muscle spasm associated with acute, painful musculoskeletal conditions. Physicians' Desk Reference, 63rd ed. ("PDR"), at 966.

completing a physical residual functional capacity assessment.  He found that Plaintiff

could frequently lift up to 25 pounds (50 pounds occasionally), could sit for 6-8 hours in

an 8-hour workday and stand or walk for 6-8 hours in an 8-hour workday.[7]  In addition,

Dr. Popielarski found Plaintiff had no postural or manipulative limitations.  Id. at 181-85.

Thus, there is no basis upon which to conclude that Plaintiff's sporadic back pain would

have affected her ability to perform work-related activities, and the ALJ's conclusion that

her back pain was not severe is supported by substantial evidence.[8]

Similarly, Plaintiff's argument that the ALJ improperly considered her knee pain

fails.  Like her complaints of back pain, Plaintiff's complaints of knee pain were also

sporadic, and appear in Mr. Jones' records only prior to the alleged onset of her disability

(October 4, 2005).  She complained to Mr. Jones of knee pain in January and February

2004.  At that time, x-rays revealed "minimal spurring of the patella and tibial spines,"

indicative of osteoarthritis.  Id. at 167-70.   In September 2005, Plaintiff again

complained of right knee pain.  She was prescribed capsaicin cream and Tylenol.  Id. at

129.  The records provided by Plaintiff's treating health care provider do not evidence any

knee impairment after her claimed disability date.

_____

[7]Dr. Popielarski's conclusions were based in part on Plaintiff's self report that she could lift and carry 50 pounds, walk 3-to-5 blocks, climb 10 steps, and sit for an hour and a half.  Id. at 185, 64.

[8]Even if Plaintiff's back pain had been found to constitute a severe impairment, based on Dr. Popielarski's assessment and Plaintiff's statement of her daily activities, there is no basis to find that she could not perform her past relevant work as stated by the VE.

Moreover, she made no complaint of knee pain to Dr. Liedman, the consultative examiner, and he made no mention of any tenderness or pain in Plaintiff's knees, while noting such difficulties in her back and hip. Tr. at 177. Thus, I conclude that there is substantial evidence to support the ALJ's determination that Plaintiff's knee impairment was not severe.

## C.     Assessment of Plaintiff's Residual Function Capacity

Plaintiff also argues that the ALJ failed to properly assess her residual functional capacity ("RFC"), and that because the ALJ did not consider all of Plaintiff's physical and mental impairments, the VE's testimony is flawed. See Pl.'s Br. at 8. Specifically, Plaintiff alleges that the ALJ (and therefore the VE) did not consider the limitations imposed by her lumbar and knee pain, limited range of motion, limitations due to fatigue and sleep problems, and challenges responding to changes in a routine work setting. These allegations are unfounded.

Testimony of a VE constitutes substantial evidence for purposes of judicial review where a hypothetical question considers all of a claimant's impairments which are supported by the medical record. Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987).

In assessing Plaintiff's RFC and in questioning the VE, the ALJ found that Plaintiff could perform work at the medium exertional level.[9]  She could stand or walk

---

[9]Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  20 C.F.R. §§ 404.1567(c),

with normal breaks for 6 hours in an 8-hour workday and sit with normal breaks for 6

hours in an 8-hour workday.  The ALJ found no postural, manipulative, visual,

communicative, or environmental limitations.  However, the ALJ concluded that Plaintiff

was capable of only low stress work, which the ALJ defined as 1-2 step tasks, not

requiring working with money or dealing with people.  Tr. at 315.  This assessment is

consistent with the RFC completed by Dr. Popielarski, tr. 180-84, the evaluation

performed by M. Penny Levin, Ph.D., id. at 186-91, the psychiatric review technique form

completed by James J. Cunningham, Ed.D., id. at 192-204, and the testimony of medical

expert, Richard B. Saul, M.D., a psychiatrist.  Id. at 293-98.

 The ALJ need only include in the RFC those limitations which she finds credible,

i.e., supported by the medical evidence.  See Burnett v. Comm'r of Soc. Sec. Admin., 220

F.3d 112, 121 (3d Cir. 2000).  As has already been discussed, the evidence does not

support any significant limitation based on Plaintiff's knee or back pain.  Neither the

medical evidence nor Plaintiff's testimony and statements regarding her daily activities,

see tr. at 188, 277-81, support Plaintiff's complaints of disabling knee or back pain.

 With respect to the limited range of motion, Dr. Liedman found that Plaintiff had

limitations in her lower back, noting that her side bending was 75% of normal, rotation

50% of normal to the left and 20% to the right, and flexion was 50% of normal.  Tr. 179.

Dr. Popielarski, who reviewed Dr. Liedman's notes and acknowledged the decreased

---

416.967(c).

14

range of motion, found that Plaintiff was physically capable of performing at the range adopted by the ALJ.  Id. 180-85.  Again, Plaintiff's testimony regarding her daily activities is consistent with the ALJ's assessment.

The medical record evidences Plaintiff's complaints of sleep disturbance and insomnia prior to the alleged onset of her disability, for which she took Benadryl.  Tr. at 152 (Aug. 24, 2004), 153 (Aug. 5, 2004), 154 (Jul. 22, 2004), 162 (May 19, 2004).  At the administrative hearing, Plaintiff described her sleep pattern as "weird."  Tr. at 289.  "I could sleep three hours, wake up, stay woke for four hours, go back to sleep for 45 minutes, get back up.  It's crazy."  Id.  Despite her unusual sleep pattern, she maintained significant daily activities and did not require medication for her insomnia.  Id. at 68.

Plaintiff  also complained to Dr. Liedman about fatigue.  In describing the fatigue early in the application process, she stated that she got fatigued in the evenings and that it lasted approximately 15 minutes and was relieved by sleep.  Tr. at 68.  Despite the recognition of Plaintiff's fatigue, Dr. Popielarski found that she could perform work at the medium exertional level.  Additionally, the ALJ again relied on Plaintiff's statements regarding her daily activities -- including walking her grandchild (or grandchildren) 7 blocks to school, cleaning, shopping, and doing laundry -- to reject Plaintiff's complaints.  Considering Plaintiff's responsibilities to her daughter's family, fatigue at the end of the day is hardly surprising.

Plaintiff also claims that the ALJ failed to consider all of the limitations noted by Dr. Levin, a consultative examiner.  Dr. Levin found that Plaintiff had limited coping

15

resources, resulting in a moderate impairment in her ability to interact with the public, co-workers, and supervisors, and her ability to respond to work pressures and respond to changes in a work setting.  Tr. at 190.  This argument is similar to that presented in Burns v. Barnhart. 312 F.3d 113 (3d Cir. 2002), in which the Third Circuit held that a hypothetical question limiting the plaintiff to "simple repetitive one, two-step tasks" was insufficient to reflect the functional limitations noted by a consultative examiner.  There, the consultative examiner found the plaintiff had borderline intellectual functioning and described his limitations as follow:

> [I]n terms of occupational adjustment, I would say he'd work fair, at best.  In terms of work rules, his common sense is more in the Borderline range.  His general intellectual functioning is there.  Relating to coworkers, he's kind of hostile . . . .  His judgment is borderline . . . .  His interaction with an authority figure, he would need an authority figure to keep an eye on him . . . .  Functioning independently, again, he's borderline.  He would be fair, at best.  His attention and concentration was in the Borderline range of intellectual functioning.  His Verbal and Performance test scores were consistently in the Borderline range.  He would not be good at doing complex or detailed types of task.  He would only be able to do simple tasks in a fair way at best . . . .  He behaved in an emotionally stable manner fair, at best.  Again, he does show some flightiness of ideas, disassociated kind of ways, and he shows underlying hostility.  In a social situation, he does try to avoid trouble, but he would need supervision, and he seems to have some loose associations that some people would just wonder where he is coming from . . . .
> Reliability: He is borderline in terms of his general intellectual functioning.

Id. at 120.

Here, Dr. Levin's findings were not nearly so detailed as the consultative examiner's in Burns.  Rather, in a check-the-box form, Dr. Levin concluded that Plaintiff suffered from moderate limitation in her ability to interact appropriately with the public, supervisors, and co-workers, and moderate limitation in her ability to respond to work pressures in a usual work setting and responding to changes in a routine work setting.  Tr. at 190.

In questioning the VE, the ALJ accommodated the limitations noted by Dr. Levin by asking the VE to consider low stress jobs defined as only one-or-two step tasks, and limiting Plaintiff's exposure to the public.  Id. at 299.  Although the ALJ did not specifically utilize the language contained in Dr. Levin's report, the hypothetical posed to the VE encompassed the limitations noted by Dr. Levin.  See White v. Astrue, No. 07-1691, 2008 WL 4488922, at *13 (W.D. Pa. Oct. 2, 2008) (similar limitations encompassed in RFC limiting claimant to simple, routine, repetitive tasks involving no interaction with the general public); Troche v. Comm'r of Soc. Sec., No. 07-780, 2008 WL 762453, at *7 (D.N.J. Mar. 19, 2008) (similar hypothetical acceptable to interpret agency consultant's check-the-box form).  Thus, I find no error in the ALJ's RFC assessment or in the hypothetical posed to the VE.

### D.   Plaintiff's Request for a Supplemental Hearing

Finally, Plaintiff argues that her due process rights were violated when the ALJ refused to grant a supplemental hearing.  In essence, Plaintiff complains that the ALJ failed to develop the record with respect to her mental impairment.  See Pl.'s Br. at 8-9.

In every social security case, the ALJ has a "duty to develop a full and fair record." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995). Here, according to Plaintiff, "[t]he only evidence in this case in regard to Ms. Webster's mental health treatment is a biopsychosocial evaluation from 2003, nearly 2 years prior to her alleged onset date and a March 2007 treatment note." Pl.'s Br. at 9.

Contrary to Plaintiff's assertion, the ALJ did comply with her duty to develop the record. Following the hearing, the ALJ subpoenaed the records from Plaintiff's mental health provider, Citizens Acting Together Can Help, Inc. ("CATCH"), and kept the record open awaiting receipt of the records. Tr. at 300, 242. Plaintiff believed that CATCH did not provide all the records covered by the subpoena and asked the ALJ to issue a further subpoena, which the ALJ declined to do on the ground that the record was adequate to reach a decision. Id. at 254, 308. If in fact the provider failed to comply with the subpoena, that failure does not render the ALJ's analysis insufficient.

The record did contain some treatment plans from CATCH, as well as medication logs and a sign-in form showing Plaintiff's consistent visits, but did not contain progress notes. See id. at 114-15, 223-25, 252, 254. In addition, the ALJ obtained two mental health consultative examinations (Drs. Popielarski and Levin). She also had a psychiatrist act as a Medical Expert in the case. Considering these efforts, it cannot be said that the ALJ failed to develop the record. See Carmichael v. Barnhart, 104 Fed. Appx. 803 (Fed. Appx. Jul. 21, 2004) (citing Sims v. Apfel, 530 U.S. 103, 111 (2000) (ALJ fulfilled duty to develop record by attempting to obtain records from medical provider and obtaining

two state agency medical expert opinions); <u>Smith v. Comm'r of Soc. Sec.</u>, 80 Fed. Appx.

268, 269 (3d Cir. Nov. 27, 2003) (medical reports, evaluation of appointed physician, and

opinions of two state appointed physicians sufficient).

      Moreover, examining the record as a whole, I do not believe that the record is

inadequate to render a decision.

> The adequacy of an ALJ's investigation is determined on a
> case-by-case basis. . . .   The essential inquiry is whether the
> incomplete record reveals evidentiary gaps which result in
> prejudice to the claimant.

<u>Lanza v. Astrue</u>, No. 08-301, 2009 WL 1147911, at *4 (W.D. Pa. Apr. 28, 2009) (internal

citations omitted).

      Here, the ALJ did discuss the evidence submitted by CATCH, but noted that

certain information conflicted with the conclusions reached by three consultative

examiners.  Specifically, Plaintiff refers to the notation in the CATCH records that she

has a GAF score of 45.[10]  Pl's Br. at 9.  The ALJ found that this was inconsistent with the

level of functioning found by Drs. Liedman (<u>tr.</u> at 174-79), Levin (<u>id.</u> at 186-91),

Cunningham (<u>id.</u> at 192-204), and Saul (<u>id.</u> at 293-97).  <u>Id.</u> at 310-11.  In addition, this

_____

[10]The Global Assessment of Functioning (GAF) score is a measurement of a
person's overall psychological, social, and occupational functioning, and is used to assess
mental health.  <u>Diagnostic and Statistical Manual of Mental Disorders</u>, 4th ed. Text
Revision (2000), ("<u>DSM IV-TR</u>"), at 32.  A GAF of 45 indicates "[s]erious symptoms
(e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious
impairment in social, occupational, or school functioning (e.g., no friends, unable to keep
a job)."  <u>Id.</u> at 34.

GAF score (record dated August 30, 2006) is inconsistent with Plaintiff's statement to Dr.

Liedman in April 2006, that she was not taking any medication for depression and

anxiety.  Id. at 177.

In sum, the GAF scores noted in the records provided by CATCH are inconsistent

with the findings of the consultative examiners and inconsistent with Plaintiff's daily

activities.  The ALJ properly considered the records before her and was not delinquent in

her duty to develop the record.

Plaintiff also sought a supplemental administrative hearing to address a perceived

inconsistency in one of the treatment plans provided by CATCH.  Tr. at 308; Pl.'s Br. at

8.[11]  In a March 8, 2007 treatment plan provided by CATCH, the therapist notes that

Plaintiff's strengths include her history of good attendance at therapy sessions.  However,

her  problems include poor attendance at therapy sessions.  Id. at 252.  The ALJ found no

inconsistency.  "In strengths it noted 'history' of good attendance.  A barrier is 'current'

poor attendance.  This is not inconsistent."  Id. at 308.  I agree that there is no

inconsistency requiring clarification, and no basis for remand.  See Torres v. Barnhart,

139 Fed. Appx. 411, 413 (3d Cir. 2005) ("Claimant cannot saddle the ALJ with his own

perspective regarding the internal cohesiveness of the treatment notes and then accuse her

of failing to develop the record . . . .")

---

[11]Although counsel did not express what the inconsistency was in his brief, I will
assume that it remains the inconsistency discussed by the ALJ in her opinion.

Finally, Plaintiff submitted to the Appeals Council a March 8, 2007, "Medical Source Statement" prepared by Plaintiff's therapist at CATCH.  To the extent Plaintiff seeks a remand for consideration of new evidence, the new submission does not qualify. Ordinarily, evidence that is not presented to the ALJ "cannot be used to argue that the ALJ's decision was not supported by substantial evidence."  Jones v. Sullivan, 954 F.2d 135, 128 (3d Cir. 1991).  However, pursuant to 42 U.S.C. § 405(g) (sentence 6), the court may remand a case "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in the prior proceeding."  Evidence is considered new if it is not cumulative to evidence already in the record.  Evidence is considered material if it is relevant to the time period for which benefits were denied and reasonably likely to have altered the ALJ's decision if it were known at the time.  Evidence is not material if it concerns a later-acquired disability or the subsequent deterioration of a previously non-disabling condition."  Szubak v. Sec. of Health and Human Servs., 745 F.2d 831, 833 (3d Cir.1984).

The courts have adopted a four factor test in considering "new" evidence.

First, the evidence must be new and not merely cumulative of what is already in the record.  Second, the evidence must be material, relevant and probative.  Third, there must exist a reasonable probability that the new evidence would have caused the Commissioner to reach a different conclusion.  Fourth, the claimant must show good cause as to why the evidence was not incorporated into the earlier administrative record.

Scatorchia v. Comm'r of Soc. Sec., 137 Fed. Appx. 468, 472 (3d Cir. 2005) (citing Newhouse v. Heckler, 753 F.2d 283, 287 (3d Cir. 1985)).

The Medical Source Statement offers little in the way of "new" evidence. The conclusions contained in a check-the-box format are merely cumulative of the information previously supplied and the conclusions reached by the consultative physicians. In fact, Plaintiff's GAF was improved at the time of this statement. Tr. at 256 (GAF of 60). With respect to functional limitations, therapist Tim Barksdale concludes that Plaintiff had slight restrictions in activities of daily living, moderate difficulties in maintaining social functioning, and often had deficiencies in concentration, persistence and pace. These conclusions are consistent with those of Dr. Levin, finding that Plaintiff had moderate difficulty interacting with the public, supervisors, and co-workers, id. at 190, and with Dr. Saul's conclusion that she had moderate difficulty maintaining concentration, persistence and pace. Id. at 295. The ALJ included these limitations in formulating the RFC and hypotheticals presented to the VE. Id. 298-99, 314-15.

Therapist Barksdale also concludes that Plaintiff would have difficulty working on a sustained basis due to her mental health issues combined with chronic pain and HIV status and that she would be absent more than three times a month. Tr. at 257. As previously discussed, Plaintiff's complaints of pain are sporadic; her HIV is asymptomatic; such a conclusion is contrary to the other medical opinions in the record; and undermined by the Plaintiff's statement of her daily activities. Thus, I conclude that the Medical Source Statement is neither new nor material, and provides no basis for remand.

22

Therefore, I make the following:

## <u>R E C O M M E N D A T I O N</u>

AND NOW, this 18th    day of   August , 2009, it is RESPECTFULLY

RECOMMENDED that the Commissioner's decision denying benefits be AFFIRMED.

The petitioner may file objections to this Report and Recommendation.  <u>See</u> Local Civ.

Rule 72.1.  Failure to file timely objections may constitute a waiver of any appellate

rights.

BY THE COURT:


/s/ Elizabeth T. Hey

_____
ELIZABETH T. HEY
UNITED STATES MAGISTRATE JUDGE